STATE OF NORTH CAROLINA v. HORACE KEEL
No. 6910SC329

(Filed 23 July 1969)

1. **Constitutional Law §§ 20, 30— equal protection — denial of free transcript of prior trial**

   In this prosecution for armed robbery, indigent defendant was not denied a basic essential of his defense at his second trial in violation of the equal protection clause of the Fourteenth Amendment by the trial court's denial of his motion that he be provided, at public expense, with a transcript of the evidence presented at his first trial which ended in a mistrial, where defendant was represented by the same attorney at both trials, the second trial was held only two months after the first, and there is nothing in the record to indicate that the court reporter was unavailable to testify if necessary to impeach the State's witnesses.

2. **Constitutional Law § 32; Criminal Law § 66— in-court identification of defendant — pretrial confrontation in courtroom — absence of counsel**

   In-court identification of defendant by robbery victim was not rendered incompetent by fact that defendant was submitted to robbery victim's view in the courtroom prior to trial in the absence of his counsel when he was placed in the prisoner's box with other prisoners and the victim, upon being asked by a police officer whether he recognized any of the three persons who robbed him, told the officer that he recognized defendant.

3. **Constitutional Law § 32; Criminal Law § 66— in-court identification of defendant — prior photographic identification — right to counsel**

   In-court identification of defendant by robbery victim was not rendered incompetent by victim's pretrial identification of defendant from police photographs without the presence of counsel to represent defendant when the photographs were exhibited to the witness, where defendant's photograph was selected by the witness from a large group of photographs without suggestion from anyone and without knowledge of defendant's name.

4. **Criminal Law § 99— expression of opinion by court — clarifying questions**

   In this prosecution for armed robbery, the trial court did not express an opinion on the evidence in asking the prosecuting witness what defendant was doing while another person held a gun in the witness' back, where the witness had previously stated more than once that defendant was one of the three persons who robbed him, the court's question being within the context of the testimony of the witness and of a clarifying nature.

5. **Criminal Law § 66— testimony that defendant looked like one of the robbers**

   In this prosecution for armed robbery, the court did not err in the admission of testimony by one of the robbery victims that although she could not state positively that defendant was one of the robbers, he looked

very much like one of them, the lack of positiveness by the witness affecting the weight and not the admissibility of the testimony.

APPEAL by defendant from *Carr, J.,* February 1969 Session of Superior Court of WAKE County.

Defendant was tried on a bill of indictment, proper in form, charging him with the felony of armed robbery.

The evidence for the State tended to show that Gilbert Tart (Tart) was manager of Bremson Diamond Company (Bremson) and was at its place of business on 6 September 1968. At about 9:15 on the morning of that date the defendant and two other persons came into the place of business. One of the three men asked the witness Tart to show him two rings which were displayed in the showcase. While Tart was doing so one of the other persons seized him from behind, and one of them put a pistol to his back. The defendant and one of the other persons then took the rings from the showcase and put them in a paper bag which they had brought with them. One of the men went into another part of the premises, called the Silver Shop, and at gun point forced Mrs. Mable Long, another employee, to come around where they were. They forced Tart and Mrs. Long to the back of the premises where they were required to lie face down upon the floor and were tied with cords that the three men brought with them. The defendant and the other two then proceeded to take unmounted diamonds and coins from the safe, and left Tart and Mrs. Long tied up on the floor. The value of the property taken was about thirty-five thousand ($35,000.00) dollars. The defendant was apprehended in Richmond, Virginia, and positively identified by the witness Tart in the courtroom as one of the three men who had robbed him.

The defendant offered evidence which tended to show by the witness Johnny Merriman, that he, Merriman, was from Richmond, Virginia, and on 6 September 1968 he was involved in a robbery by the use of pistols of Bremson Diamond Company. There were two other persons involved with him, but the defendant Horace Keel was not one of those persons. He refused to divulge the names of the other two persons who were with him because he said they had threatened him and he was afraid. The defendant further offered evidence tending to show by Mrs. Mable Long that she could not positively identify the defendant as being one of the three men who robbed the place of business of Bremson Diamond Company on this occasion.

Defendant's plea was not guilty, trial was by jury, verdict was guilty of armed robbery as charged.

From a judgment of imprisonment of not less than fifteen years nor more than eighteen years, the defendant appealed to the Court of Appeals.

*Attorney General Robert Morgan and Assistant Attorney General Bernard A. Harrell for the State.*

*Charles R. Hassell, Jr., for the defendant.*

MALLARD, C.J.

[1]  Defendant was tried first on this charge at the December 1968 Session of Superior Court of WAKE County. This trial resulted in a mistrial due to the inability of the jurors to agree upon a verdict. After this mistrial the defendant, an indigent, on 17 January 1969, filed a motion requesting that he be provided, at public expense, with a transcript of the evidence presented at the December 1968 trial which ended in a mistrial. The reason stated in the motion is "that he deems it necessary to have a transcript of the evidence presented at his first trial in order that he may properly prepare his defense for a second trial; that he is indigent and unable to pay the costs of preparation of said transcript." No other reason is set forth in the motion requesting the transcript which was signed by his attorney Charles R. Hassell, Jr., who represented the defendant at both his trial in December 1968 which resulted in a mistrial, and his trial the following February which resulted in his conviction. The court, after considering the motion found, *inter alia,* that the motion "is not founded upon a showing of necessity" and denied the motion. The defendant assigns this denial as error.

The question may be stated thus: Is the failure to provide the defendant with a transcript of the evidence taken by the court reporter at his first trial, nothing else appearing, a denial of a basic essential of his defense at a second trial and therefore a violation of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States? In this case we hold that it does not.

The cases of *Griffin v. Illinois,* 351 U.S. 12, 100 L. ed. 891, 76 S. Ct. 585 (1956), and *Williams v. Oklahoma City,* 395 U.S. 458, 23 L. ed. 2d 440 (1969), are distinguishable from this case. There it was held that the due process and equal protection clauses of the Fourteenth Amendment were violated by the State's denial of an appellate review solely because of a defendant's inability to pay for a transcript. Here, the same lawyer who represented the defendant at the first trial which resulted in the mistrial, signed the motion re-

questing the transcript of the evidence and the reason given was to assist him in the preparation of the defense for the second trial. No appellate review was involved here. The judge, based upon the motion filed, found that no necessity was shown for the transcript of the evidence and denied the motion.

A transcript of the evidence taken at a trial is only the court reporter's version of what the evidence was. It does not become the official record of the transcript of the evidence of a trial until the opposing parties agree thereto or it is settled by the trial judge. No doubt the judge, in finding that such was not necessary, recognized the fact that most lawyers take their own notes during the trial of what a witness says, and also that if a question arises as to a conflict in what a witness said, the court reporter is ordinarily available to testify from his notes. There is nothing in this record to indicate that the court reporter was not available to testify if necessary to impeach the State's witnesses.

In the case of *Peterson v. United States,* 351 F. 2d 606 (9th Cir. 1965), new counsel was substituted for the defendant after the conclusion of the first trial and he promptly moved that he be supplied, at public expense, with a transcript of the first trial. The court held:

"The Government need not then provide an indigent defendant with every advantage which money could buy for a litigant. The question is whether denial of access to this material in the circumstances of this case amounted, on the one hand, to a loss of mere advantage, or, on the other hand, to the deprivation of a basic essential of defense. * * *

In our judgment, where new counsel is involved and the testimony subject to impeachment is crucial to the Government's case, a transcript of the earlier testimony is the only adequate means for providing this material. The holding of this court in *Forsberg v. United States,* 351 F. 2d 242 (9th Cir. 1965) is thus distinguishable.

Where access to such essential material can be had for a fee, this 'money hurdle' must, under *Griffin,* be met for the indigent at Government expense. In this case means for meeting it is provided by Title 28, § 753(f), U.S.C."

In the case of *Forsberg v. United States, supra,* the same court upheld the denial of a transcript where a defendant was represented by the same counsel at the first and second trials and the trial court ruled that it would permit the reporter during the second trial to

privately read the testimony of any witness used on the first trial to defendant's lawyer.

In the case of *Williams v. United States,* 358 F. 2d 325 (9th Cir. 1966), the defendant, who was also represented by new counsel, and was denied a complete transcript of the first trial, for the first time in his brief contended that the primary use of the transcript of the evidence given at the first trial would have been for the impeachment of the State's witness.

The court held that such an assertion under the circumstances of that case was too conjectural and speculative to base a holding that the District Court had abused its discretion in entering the order complained of.

In the case before us, the first trial was held in December 1968. The second trial was held in February 1969. The defendant was represented by the same attorney at both trials as well as in this court. Defendant does not say that his attorney failed to take notes at the first trial of what the witnesses said. The first trial ended in a mistrial on 10 December 1968. The second trial began on 10 February 1969. It thus does not appear that sufficient time had elapsed between the two trials to cause one's memory of what the witnesses said to grow dim. Although not stated in his request for the transcript of the evidence, the defendant now contends that the primary use of the transcript of the testimony would have been for the purpose of impeaching the State's witness. Whether defendant's counsel could have actually impeached the State's witness with a transcript of what the court reporter said the evidence was is not shown. The defendant made no contention that the court reporter was not available and, in the absence of such a contention, we assume that he was available to the defendant, if desired, as a witness for the purpose of testifying to what his notes show the witnesses testified on the first trial. The only way, other than on cross-examination, the evidence in a reporter's transcript could be utilized to show conflicts in the testimony of the State's witnesses would be to have the reporter sworn and testify with respect thereto. There has been no showing here that defendant was restricted in his cross-examination of the State's witnesses. There is nothing on this record to reveal that the prosecution had a copy of the court reporter's transcript of the testimony. Both the defendant and the State had the right to use the court reporter's testimony if there was a conflict in the testimony of the witnesses.

The circumstances of this case do not reveal such a need for the transcript of the evidence that the failure of the court to require that

defendant be supplied with a copy of the reporter's transcript of the evidence, at public expense, was a deprivation of a basic essential of his defense.

[2]    Defendant contends that his constitutional rights to counsel and due process of law were violated by the refusal of the trial court to suppress all identification evidence. This contention is without merit.

Defendant cites the now familiar case of *United States v. Wade,* 388 U.S. 218, 18 L. ed. 2d 1149, 87 S. Ct. 1926 (1967), relating to a line-up. In the case before us there was no line-up.

After the robbery a police officer brought some pictures on two different occasions to the witness Tart to look at. Mr. Tart identified the defendant's picture on the latter of these occasions as being a picture of one of the three men who robbed him. Defendant's picture had not been included in the first group of pictures shown Tart. The defendant's picture was selected by Tart from a group of twenty-five or more photographs from Raleigh, Kinston and Richmond, Virginia, without any suggestions from anyone and without knowing his name. Tart testified he had seen the defendant for several minutes at the time of the robbery. Neither the officer nor the witness Tart knew the defendant prior thereto. There was no suggestion by the officer at any time to the witness Tart that the defendant or any one of the persons whose photographs were being shown was one of the persons taking part in the robbery. After the date of the robbery, the next time the witness Tart actually saw the defendant was when he, Tart, was attending court as a witness in response to a subpœna in this case. Mr. Tart stated that he arrived at court at ten o'clock and was sitting in the courtroom. The courtroom was full and there were from nine to fifteen people in the prisoner's box. The defendant was among this group, and no one had suggested to Mr. Tart that the defendant was in this group of people. The evidence is conflicting as to whether defendant's counsel was present in the courtroom when Tart first observed the defendant was in the courtroom. Later that day, after Tart had been "in the court room for some time," the police officer who had shown him the photographs came to him and asked him if he recognized any of the three persons who robbed him and he told the officer that he recognized the defendant.

We are of the opinion and so hold that this was not such a line-up identification process, or confrontation, in the absence of defendant's counsel, if counsel was indeed absent, as to deprive the de-

fendant in any way of his constitutional right to a fair trial. See *State v. Hunsucker,* 3 N.C. App. 281, 164 S.E. 2d 507 (1968).

[3] Defendant asserts that the "photographic confrontation was a critical stage of the prosecution at which the defendant was entitled to the representation of counsel," and cites in support thereof the case of *Simmons v. United States,* 390 U.S. 377, 19 L. ed. 2d 1247, 88 S. Ct. 967 (1968). The *Simmons* case does not support this contention. In *Simmons* the defendant did *not* contend that he was entitled to the presence of counsel at the time the pictures were shown to the witnesses.

In *Simmons* the court said:

"Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrest by allowing eye-witnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eye-witness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in *Stovall v. Denno,* 388 U.S. 293, 301-302, 18 L. ed. 2d 1199, 1206, 87 S Ct 1967, and with decisions of other courts on the question of identification by photograph."

In the case before us, at the time the pictures were shown to Tart, the defendant's name was not known to the officer or Tart. In the "totality of the circumstances" of this case, to hold that defendant was entitled to the representation of counsel at the time the photographs were exhibited to Tart would be as unreasonable in many respects as a holding that an indigent defendant was entitled to the presence of a court appointed lawyer at the time and place the crime was committed. When this case is considered on its own facts under the applicable rules, we are of the opinion and so hold that the photographic identification was not the result of any sug-

gestion and certainly was not so "impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification."

**[4]**    The defendant also contends that the court committed error and expressed an opinion when the following occurred in the questioning of the witness Tart:

"COURT:    Did you say that some diamonds were taken out of the safe?

A.    Yes, sir, and also out of the showcase, yes, sir.

COURT:    What part did the defendant have to do with, you say there was some other man that had a gun in your back, what was the defendant doing while he was holding the gun in your back?

A.    He was with the other, the third man emptying the window."

When these questions were asked by the judge, the witness Tart had already stated more than once, that the defendant was one of the three persons who robbed him. The questions asked by the judge were within the context of the testimony of the witness, of a clarifying nature, and we do not think could have reasonably been interpreted as an expression of opinion. It was not error under the circumstances disclosed by this record for the trial judge to ask these questions. *State v. Kirby,* 273 N.C. 306, 160 S.E. 2d 24 (1968).

**[5]**    Defendant offered the witness Mrs. Mable Long, who testified on direct examination that she was one of the two employees of Bremson Diamond Company who were tied up by the three persons who committed the robbery. She did not identify any one of the robbers by the photographs shown to her and testified that she could not positively identify the defendant as being one of them. On cross-examination immediately following this testimony, the solicitor asked her what was her best opinion about it. Objection was sustained. Later the solicitor asked the witness if, based upon her observation of the people who committed the robbery, she had an opinion that the defendant was one of the people involved. The witness answered by saying that she could not answer positively but the defendant looked very much like one of them.

In Stansbury, N.C. Evidence 2d, § 129, it is said: "A lay witness may give his opinion as to the identity of a person whom he has seen, and his lack of positiveness affects only the weight, not the admissibility, of his testimony."

The defendant's assignment of error to the admission of the

opinion of the defendant's witness Long, on cross-examination by the solicitor, is overruled.

Defendant has other assignments of error and contentions which we do not think merit discussion.

We are of the opinion that the defendant has had a fair trial free from prejudicial error.

No error.

BRITT and PARKER, JJ., concur.