STATE OF NORTH CAROLINA v. CALVIN LEROY PRESTON AND JAMES LOUIS MITCHELL

No. 7010SC251

(Filed 5 August 1970)

1. Constitutional Law § 34; Criminal Law § 26— double jeopardy — N. C. Constitution

   While the prohibition against double jeopardy is not stated in express terms in the North Carolina Constitution, it has long been

regarded as an integral part of the "law of the land" within the meaning of Article 1, § 17.

2. **Constitutional Law § 34; Criminal Law § 26— double jeopardy — 5th amendment to U. S. Constitution — applicability to states**

   The prohibition against double jeopardy contained in the Fifth Amendment to the Constitution of the United States has been made applicable to the states by the Fourteenth Amendment.

3. **Constitutional Law § 34; Criminal Law § 26— four mistrials because of hung jury — fifth trial — double jeopardy**

   Fifth trial of defendants for the crime of armed robbery after four previous trials for the same offense had ended in mistrials when the juries had been unable to agree on a verdict did not violate defendants' constitutional or common-law guaranties against double jeopardy.

4. **Constitutional Law §§ 20, 30— denial of free transcripts of prior trials**

   In this fifth trial of indigent defendants for the crime of armed robbery, defendants were not deprived of "an essential tool for their defense" by the denial of their motion that they be provided free transcripts of four previous trials for the same offenses which ended in mistrials when the juries were unable to agree on a verdict, where defendants were represented in all five trials by the same attorneys, the record shows the attorneys had become thoroughly familiar with the testimony of all of the witnesses in the case, and the court reporter was available and could have been used if there was a conflict in the State's testimony.

5. **Constitutional Law § 31; Witnesses § 8— expenses of out-of-state witnesses — refusal to order payment by state or county — use of transcript of testimony in prior trial**

   In this fifth trial of two indigent defendants for armed robbery, the trial court did not err in the denial of defendants' motion for an order directing the county or state to pay the expense of transporting two defense witnesses from another state, where a similar motion had been made and allowed prior to each of the four preceding trials, the trial court found that the interests of defendants could be protected by use of the testimony of these witnesses as given by them under oath and recorded by the court reporter at a previous trial of this case, and the transcript of testimony given by the witnesses at a previous trial was in fact admitted in evidence and presented to the jury.

6. **Criminal Law § 66— lineup — nonretroactivity of Wade and Gilbert decisions**

   The *Wade* and *Gilbert* decisions do not apply to a lineup conducted on 4 June 1967.

7. **Constitutional Law § 30; Criminal Law § 66— lineup procedure — totality of circumstances test — unnecessary suggestiveness — due process**

   Defendants are entitled to suppress any evidence resulting from lineup procedures which the "totality of circumstances" shows were

State v. Preston

"so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process.

8. **Constitutional Law § 30; Criminal Law § 66— illegal one-man lineup of one defendant — subsequent five-man lineup with both defendants — in-court identification of both defendants**

In this prosecution of two defendants for armed robbery, although one-man lineup of one defendant at which each of two State's witnesses identified that defendant as one of the robbers, if considered as an isolated fact, was improperly suggestive, identification of both defendants in a five-man lineup three hours later and in-court identification of both defendants by the two witnesses were not thereby so tainted as to lead to any "irreparable mistaken identification," where the five-man lineup was conducted in a proper manner, the two witnesses independently and without consultation with each other readily and positively identified both defendants, the robbery occurred only the preceding afternoon in well lighted premises, both robbers were in the immediate presence of both witnesses during the robbery from five to seven minutes, nothing occurred at the lineup which would lead the witnesses to connect defendants with each other, and the ample opportunity which both witnesses had to observe both robbers supports the conclusion that the in-court identifications were based on the witnesses' observations of defendants during the robbery and not upon identification of one defendant in the one-man lineup or both defendants in the five-man lineup.

9. **Criminal Law §§ 43, 60— admissibility of photograph of fingerprint**

A photograph of a fingerprint, as of any other object, is admissible for the restricted purpose of explaining or illustrating to the jury testimony relevant and material to the controversy where there is evidence of the accuracy of the photograph.

10. **Criminal Law §§ 43, 60— admission of photograph and negative of fingerprint**

Where there was evidence as to the accuracy of a photograph of a "lifted" fingerprint and of the negative from which it was made, and evidence that the negative had been left, and thereafter found, in a police photo laboratory which had been kept under lock and key, the trial court did not err in the admission of expert testimony concerning the identification of defendant's fingerprints and in the admission for illustrative purposes of the photograph and the negative from which it was made.

APPEAL by defendants from *Carr, J.,* 17 November 1969 Criminal Session of WAKE Superior Court.

This is an appeal from the fifth trial of defendants for the crime of armed robbery. Four previous trials ended in mistrials when the juries were unable to agree. At the fifth trial the State presented the testimony of two employees of Roy's Cleaners, who identified defendants as the men who had come into the

premises of Roy's Cleaners on New Bern Avenue in the City of Raleigh on 3 June 1967 and with the threatened use of a pistol had robbed them of the sum of $70.00. Fingerprint evidence indicated that defendant Mitchell's prints were found on a counter at a spot the witnesses said one of the robbers had placed his hand. Defendants presented evidence to show they had never been in Roy's Cleaners on 3 June 1967 or at any other time and that they had been in the constant company of other persons and at other locations throughout the entire day of 3 June 1967. The jury found each defendant guilty of armed robbery and from judgments on the verdicts imposing prison sentences, both defendants appealed.

*Attorney General Robert Morgan and Staff Attorney Edward L. Eatman, Jr., for the State.*

*Liles & Merriman, by William W. Merriman III, for defendant appellant Mitchell.*

*McDaniel & Fogel, by L. Bruce McDaniel for defendant appellant Preston.*

PARKER, J.

Appellants first assign as error the trial court's refusal to grant their motion to dismiss which was filed prior to the fifth trial. While this motion as presented to the trial court appears to have been based in part upon the contention that defendants were being denied their Sixth Amendment right to a speedy trial, on this appeal appellants have abandoned that position and have based their argument entirely upon the contention that their motion to dismiss amounted to a plea of former jeopardy because of the four previous mistrials and should have been allowed on that ground alone. Since the briefs and arguments presented by appellants and the State are directed solely to that aspect of the matter, we will similarly limit our consideration in this opinion.

[1, 2] While the prohibition against double jeopardy is not stated in express terms in the North Carolina Constitution, it has long been regarded as an integral part of the "law of the land" within the meaning of Article I, Section 17, of our State Constitution. *State v. Birckhead,* 256 N.C. 494, 124 S.E. 2d 838, and cases cited therein. By the decision of the United States Supreme Court in *Benton v. Maryland,* 395 U.S. 784, 23 L.Ed. 2d

707, 89 S. Ct. 2056, decided 23 June 1969, the prohibition against double jeopardy contained in the Fifth Amendment to the Constitution of the United States has now been made applicable to the states by the Fourteenth Amendment. Since North Carolina has long recognized the principle both as "a fundamental and sacred principle of the common law, deeply imbedded in our criminal jurisprudence," *State v. Crocker,* 239 N.C. 446, 80 S.E. 2d 243; *State v. Prince,* 63 N.C. 529, and as an integral part of our own constitutional law, we do not find it necessary to consider whether the principle announced in *Benton* should be applied retroactively to the first four trials of this case, all of which occurred prior to the date of that decision. Both federal decisions, applying the Fifth Amendment, and state decisions, applying common law and state constitutional principles, have recognized that, in certain situations arising in criminal prosecutions, the court may order a mistrial before verdict and again place defendant on trial without violating the double jeopardy prohibition. This was recognized by the United States Supreme Court in *Wade v. Hunter,* 336 U.S. 684, 93 L.Ed. 974, 69 S. Ct. 834. The majority opinion in that case contains the following:

> "The double-jeopardy provision of the Fifth Amendment, however, does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. Such a rule would create an insuperable obstacle to the administration of justice in many cases in which there is no semblance of the type of oppressive practices at which the double-jeopardy prohibition is aimed. There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again."

State court decisions have also recognized that a retrial after mistrial from a hung jury does not violate the guaranty against double jeopardy. 22 C.J.S., Criminal Law, § 260, p. 679.

> "The early common-law rule was that the discharge of an impaneled jury in a criminal case for any cause before the verdict would sustain a. plea of former jeopardy and operate practically as a discharge of the prisoner. The modern rule, however, permits the court to discharge a jury

without working an acquittal of the defendant in any case where the ends of justice would otherwise be defeated. This calls for the exercise of sound discretion on the part of the court, and the power to discharge is to be exercised only where there is a cogent reason or a manifest necessity. It cannot be arbitrarily exercised." 21 Am. Jur. 2d, Criminal Law, § 194, p. 246.

Decisions of the North Carolina Supreme Court are in accord. See *State v. Battle,* 267 N.C. 513, 148 S.E. 2d 599, and cases cited therein. In *State v. Birckhead, supra,* the North Carolina rule was stated as follows:

"We conclude that the trial judge in cases less than capital may, in the exercise of sound discretion, order a mistrial before verdict, without the consent of defendant, for physical necessity such as the incapacitating illness of judge, juror or material witness, and for 'necessity of doing justice.' . . . His order is not reviewable except for gross abuse of discretion, and the burden is upon defendant to show such abuse."

[3]   Appellants recognize the foregoing principles but contend they are properly applicable to cases in which a defendant is retried after only one mistrial and that a fifth trial after four mistrials amounts to such "an overreaching and oppressive prosecution" as ought not to be allowed. A similar argument was presented to and rejected by the United States Court of Appeals for the Second Circuit in *U. S. v. Persico,* 425 F. 2d 1375, decided 15 April 1970. The court found no deprivation of constitutional rights when defendants were tried a fifth time after four previous trials for the same offense. In *Persico* the first trial ended in a hung jury, the second in conviction which was reversed on appeal, the third in a mistrial because of a hung jury and because Persico was shot, and the fourth in conviction which was again reversed on appeal.   The court approved the fifth trial, which resulted in conviction, finding there had been no transgression of the due process limitations upon the governmental rights of retrial. While that case is certainly distinguishable from the case presently before us on the grounds that in *Persico* two of the four previous trials had resulted in convictions, nevertheless it is authority for the proposition that five trials for the same offense do not necessarily result in deprivation of the defendant's constitutional or

common-law rights. While it is, of course, possible that a case may occur in which the number of trials, standing alone, is so excessive as to exceed due process limitations upon the governmental rights of retrial, each case must necessarily be decided upon its own facts. Under our practice the decision must first be made by the trial judge, and his order in that regard, at least in noncapital cases, is not reviewable except for gross abuse of discretion. The burden is on defendant to show such abuse. On the record before us in the present case we find no abuse in the trial judge's ruling which denied defendants' motion to dismiss, and appellants' first assignment of error is accordingly without merit.

[4] Appellants assert that the trial court committed error in refusing to grant their motion, made prior to the fifth trial, that they be furnished at public expense transcripts of the four previous trials. In their motion as presented to the trial court defendants alleged their indigency and asserted that "said defendants deem it necessary for them to have transcripts of the evidence presented at these trials," but gave no reason why they deemed it necessary. In their brief on this appeal appellants argue that they were entitled to be furnished transcripts because use of the transcripts in connection with cross-examination of the State's witnesses was "an essential tool for their defense." However, it appears that appellants were represented at their fifth trial by the same court-appointed attorneys who had represented them at the four previous trials. The record clearly indicates that these attorneys had become thoroughly familiar with the testimony of all of the witnesses in the case. There was no showing that cross-examination of the State's witnesses was restricted in any way. It appears that the court reporter was available and could have been used if there was a conflict in the State's testimony. On the record before us we find nothing which indicates that there was such a need for the transcripts that denial of their motion amounted to any deprivation of "an essential tool for their defense." *State v. Britt,* 8 N.C. App. 262, 174 S.E. 2d 69; *State v. Keel,* 5 N.C. App. 330, 168 S.E. 2d 465.

[5] Appellants assign as error the overruling of their motion, made prior to the fifth trial, for an order directing the County or State to defray the cost of transporting two defense witnesses from Pennsylvania. A similar motion had been made and allowed prior to each of the four preceding trials, on each occasion a

judge of superior court, having ordered the Wake County Treasurer to appropriate the sum of $182.00 (being mileage at 10¢ a mile and witness fees of $5.00 per day for each witness) to obtain the attendance of these witnesses. When the motion was again made prior to the fifth trial, the presiding superior court judge entered an order finding as a fact that the testimony of these witnesses (who were a sister and brother-in-law of the defendant Mitchell) as given by them under oath at a previous trial was available to defendants, that there was no provision of law under which Wake County or the State of North Carolina could be required to pay the expenses of the witnesses as requested, and that the interests of the defendants could be protected by the use of the testimony of these witnesses as theretofore given by them under oath and recorded by the court reporter at a previous trial of this case. On these findings the judge denied the motion. In this we find no error. While North Carolina has adopted the "Uniform Act to Secure the Attendance of Witnesses from without a State in Criminal Proceedings," G.S., Chap. 8, Art. 9, appellants have cited no authority, and our research has discovered none, that the court may compel the state or county to appropriate funds for purpose of paying the mileage and witness fees specified in that statute. It may be that a case might arise in which due process would require that the public bear such an expense. We do not view the present as such a case. Here the defendants were not denied opportunity to present to the jury the testimony of their out-of-state witnesses. The transcript of the testimony as given by these witnesses under oath at a previous trial of this case was admissible in evidence. *Norburn v. Mackie*, 264 N.C. 479, 141 S.E. 2d 877. This testimony was in fact admitted in evidence and presented to the jury. Under these circumstances we find no reversible error in the court's refusal to grant defendants' motion that the County or State be once again required to pay the expense of bringing these witnesses in person to North Carolina.

[6-8]    Two employees of Roy's Cleaners, the premises where the robbery occurred, testified for the State and made positive in-court identification of the defendants as the persons who had committed the robbery. Appellants contend that admission of this in-court identification testimony was error because it was based upon a prior illegal lineup identification. We do not agree. It should first be observed that the lineup in question occurred

on 4 June 1967, so that *Wade* and *Gilbert* do not apply. *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199, 87 S. Ct. 1967. Even so, if the "totality of circumstances" shows the use of lineup procedures "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to be a denial of due process of law, defendants would be entitled to suppress any evidence resulting from such lineup procedures. *State v. Rogers,* 275 N.C. 411, 168 S.E. 2d 345. The question presented, therefore, is whether the lineup procedures followed in the present case were "unnecessarily suggestive and conducive to irreparable mistaken identification." In our opinion they were not. Evidence presented in this case, both before the jury and at the *voir dire* which was conducted to determine admissibility of the in-court identification testimony, discloses that on the day following the robbery each of the two witnesses saw one of the defendants, Preston, in a room by himself at the police station, at which time each of the witnesses identified Preston as one of the robbers. About three hours later each of the two witnesses positively identified both defendants when they observed them in a five-man lineup which appears to have been conducted in all respects in a proper manner. All five men in this lineup were of the same race, were about the same height, and were dressed about the same. They were identified in the lineup only by number, and the two witnesses, each acting independently and without any consultation with the other, readily and positively identified both defendants. The robbery itself had occurred only the preceding day. It took place about 12:30 p.m. on a summer afternoon in well lighted premises. Both robbers were in the immediate presence of both witnesses, at times as close as two feet, for a period of from five to seven minutes. While the presentation of the defendant Preston alone to the witnesses was, if considered as an isolated fact, improperly suggestive, we do not agree with appellants' contention that all further identification of both defendants was thereby so tainted as to lead to any "irreparable mistaken identification." On the contrary, nothing appears to indicate that at the subsequent five-man lineup anything occurred which would lead the witnesses to connect Mitchell with Preston, and both witnesses positively identified both defendants. Furthermore, the ample opportunity which both witnesses had to make full observation of both defendants during the course of the robbery, supports the conclusion that the subsequent in-court identification which both witnesses made was based on their observation of defendants during the course of the

robbery, rather than upon any identification made at the police station at the time either of the one-man lineup of Preston or at the time of the five-man lineup at which both Preston and Mitchell were identified. Nothing in the record in the present case supports the conclusion that there was even a remote, much less a substantial, likelihood of irreparable misidentification.

[10]  Appellants contend there was error when the trial court overruled their objections to testimony and exhibits relating to fingerprints of defendant Mitchell which had been "lifted" from a spot on the counter at Roy's Cleaners pointed out to the police investigators by the two employees as a place touched by one of the robbers. J. W. Narron, a fingerprint expert then employed by the Raleigh Police Department, testified that he placed the "lifted" fingerprints on a white card, and on 4 June 1967, the day following the robbery, compared the prints with fingerprints of defendant Mitchell which were on file in the police department. Narron identified the "lifted" fingerprints on the card as those of Mitchell, and made handwritten notes on the card on which the "lifted" fingerprints appeared. Narron then photographed the card with the "lifted" fingerprints and his handwritten notations on it, and took the film to the police processing facility for development. The film was developed into a negative, and photographic prints (positive images) were made from this negative. These photographic prints were then placed in an envelope with the original card on which the "lifted" prints appeared, and this envelope was filed.  This envelope was apparently lost and even though diligent search has been made for it, has never been found. The negative was filed in the photo processing room, but was overlooked before the first trials of this case and was not discovered until just prior to the fourth trial, when it was found among "miscellaneous" negatives.

At the fifth trial Narron testified that on the day following the robbery he compared the "lifted" fingerprints with those of Mitchell and positively identified them as being the same. The photographic negative which exactly reflected the card with the "lifted" fingerprints and handwritten notations was identified by Narron. He also identified a photographic print which had been made from this negative, and testified that defendant Mitchell's fingerprints matched those reproduced in the negative and in the photographic print which had been made therefrom.

State v. Preston

Robert E. Lee, who was employed in the fingerprint identification and crime photography division of the police department, testified that on 11 November 1968 he discovered the negative among the miscellaneous negatives on file in the police department. He testified that the room in which this negative was found was kept under lock and key and access to it was restricted to authorized police personnel.

[9, 10] The main thrust of appellants' objections made at the trial to this fingerprint evidence, and their argument on this appeal, is directed to questioning the whereabouts of the negative from June 1967 to the date it was found by Lee on 11 November 1968. Appellants argue that this is a "missing link" in the chain of possession of the negative, and that thereby the fingerprint evidence was rendered inadmissible. Appellants cite no authority for this position, and we can find neither reason nor authority to support their contention. A photograph of a fingerprint, as of any other object, where there is evidence of accuracy of the photograph, is admissible for the restricted purpose of explaining or illustrating to the jury testimony relevant and material to the controversy. *State v. Tew*, 234 N.C. 612, 68 S.E. 2d 291. Here, there was evidence as to the accuracy of the print and of the negative from which it had been made. There was also evidence that the negative itself had been left, and thereafter found, in the police photo laboratory which had been kept under lock and key. We find no error in admission of the expert testimony concerning identification of defendant Mitchell's fingerprints and no error in admitting in evidence for illustrative purposes the photographic print and the negative from which it was made.

Appellants also assign as error portions of the court's charge to the jury. We have examined all of these assignments of error carefully, and find that the charge, taken contextually and viewed as a whole, is free from prejudicial error.

Defendants have been represented throughout by able counsel who have diligently protected all of their rights. From careful examination of the entire record we find that defendants have received a fair trial which was free from prejudicial error.

No error.

CAMPBELL and VAUGHN, JJ., concur.