STATE OF NORTH CAROLINA v. GEORGE WILLIAMS

No. 804SC843

(Filed 5 May 1981)

1. **Criminal Law § 91.6– denial of continuance to obtain transcript**
    In this fourth trial of defendant for misdemeanor larceny after three previous trials had ended in mistrials, the trial court did not abuse its discretion in the denial of defendant's motion for a continuance so that he could obtain a transcript of the third trial to aid in impeaching the credibility of the State's witnesses where defendant failed to show the existence of any inconsistency between the testimony of the witnesses in the third and fourth trials; defense counsel had a complete transcript of the first trial, the only proceeding in which he did not represent defendant; the three persons who testified for the State at the fourth trial presented the case in chief against defendant at all of the trials; and defense counsel, due to his participation in two of the previous trials, had more than an adequate opportunity to acquaint himself with the content of their eyewitness testimony to an extent whereby he could easily have revealed any discrepancies which might have appeared therein during the course of the fourth trial.

2. **Constitutional Law § 34; Criminal Law § 26.8– double jeopardy – fourth trial after three mistrials**

Defendant's constitutional protection against double jeopardy was not violated by his fourth trial for larceny after a prior mistrial for juror misconduct and two prior mistrials for failure of the jury to agree on a verdict where all four trials took place in less than a year, the three mistrials were declared for sufficient and proper reasons, and defendant did not take exception to any of the mistrials.

3. **Criminal Law § 112.6; Larceny § 8.1; Public Officers § 11– larceny trial of deputy sheriff – instructions on public authority defense**

In this prosecution of a deputy sheriff for larceny of property from a hardware store, the trial court adequately instructed the jury on defendant's defense that he was acting within his public authority when he took the items from the store.

APPEAL by defendant from *Fountain, Judge.* Judgments entered 10 April 1980 in Superior Court, ONSLOW County. Heard in the Court of Appeals 29 January 1981.

Defendant was convicted of two counts of misdemeanor larceny, pursuant to G.S. 14-72, and judgment was entered imposing concurrent jail sentences of eight months.

Defendant was first tried and convicted in the Duplin County District Court on 6 June 1979. Defendant appealed to the Duplin County Superior Court where he was tried on 13 August 1979. That proceeding concluded with a mistrial on 17 August 1979 due to the misconduct of several jurors. The case was then transferred to Onslow County Superior Court for another trial on 27 November 1979. This trial also ended in a mistrial because the jury could not reach a unanimous verdict. Another mistrial had to be declared in the third trial on 26 March 1980 because the jury could not agree on a verdict. No objection was made or exception taken to the entry of the three mistrials. Before the fourth trial of the matter began, defendant moved for a continuance and a dismissal on double jeopardy grounds. Judge Fountain denied the motions, and defendant was convicted of the charges on 10 April 1980.

The State's evidence showed that defendant, a deputy sheriff, went to Whaley's Furniture Store in Kenansville, North Carolina in the daytime on two occasions in May 1979 and stole a power booster and some brackets worth $41.55. He was dressed in his official uniform and arrived at the store in a marked patrol car each time. Defendant was later confronted with the

thefts by an employee of the store which prompted him to tender some money for the items. He then signed a receipt which stated: "May 9, 1979, George Williams – one radio power booster $39.95, $1.60 tax, total $41.55." The receipt was marked "paid" in the amount of $25.00 and noted a balance of $16.55 due.

Defendant's only evidence consisted of the testimony of R.J. Whaley, the owner of the store. He testified that he saw defendant on 10 May 1979. Defendant told Whaley that he had taken the items as part of an independent undercover investigation:

> Well, he said he had an informer that informed him somebody was stealing stuff out of my store and saw a little short black man come out of the back end of the store, and he was sort of doing some undercover work. Well, he sort of wanted to give it [the power booster] back to me and I told him I didn't know what to do about it then.
>
> . . . .
>
> He said he had heard that Boo Boo [an employee] had been stealing from me. [H]e was checking Boo Boo out. And I never give him [defendant] any authority whatsoever. Boo Boo takes my bank deposit to the bank; he runs my cash register, and I trust him thoroughly.

*Attorney General Edmisten, by Associate Attorney James W. Lea, for the State.*

*Irving Joyner, for defendant appellant.*

VAUGHN, Judge.

Three issues are presented: (1) whether the trial judge erred in denying defense counsel's motion for a continuance at the outset of the fourth trial; (2) whether the judge was required to dismiss the charges on double jeopardy grounds since defendant had already been tried three times with each proceeding resulting in a mistrial; and (3) whether the judge erred in failing to instruct the jury that the State had the burden of proving that the taking by defendant was not done in the lawful exercise of public authority. We disagree with defendant's contentions and hold that the court below acted properly in each instance.

[1] It is axiomatic that a motion for a continuance is addressed to the sound discretion of the trial court and that its ruling thereon will not be disturbed absent an abuse of discretion. *State v. Weimer,* 300 N.C. 642, 268 S.E. 2d 216 (1980); *State v. Rigsbee,* 285 N.C. 708, 208 S.E. 2d 656 (1974); *State v. Raynor,* 45 N.C. App. 181, 262 S.E. 2d 712 (1980). Nevertheless, where a motion for a continuance raises a constitutional issue, the trial court's decision thereon involves a question of law, not fact, which may be reviewed by an examination of the circumstances of each case. *State v. McFadden,* 292 N.C. 609, 234 S.E. 2d 742 (1977); *State v. Huffman,* 38 N.C. App. 584, 248 S.E. 2d 407 (1978). Here, defendant contends that he needed the transcript from the third trial to impeach the credibility of the State's witnesses by "pointing out to the jury basic discrepancies in [their] testimony." It is true that the constitutional right of confrontation includes the right to face "the accusers and witnesses with other testimony," but the burden is on defendant to show a clear denial of this right. *State v. Garner,* 203 N.C. 361, 166 S.E. 180, 181 (1932). Defendant, however, only makes a bald assertion that his right to confront the State's witnesses was denied and does not specifically indicate in what way a transcript of the witnesses' prior testimony in the March trial would have enabled him to discredit their testimony in the April trial more effectively. Moreover, he does not direct our attention, either by means of the record or the brief, to the existence of any inconsistency between the witnesses' statements in April with those made at the former trial.

In these circumstances, we hold that defendant has not performed the threshold task of demonstrating an error in the denial of the motion for continuance which prejudiced his case. *See State v. Hartman,* 49 N.C. App. 83, 270 S.E. 2d 609 (1980); *State v. Winston,* 47 N.C. App. 363, 267 S.E. 2d 43 (1980). Defense counsel had a complete transcript of the first trial in the Duplin County Superior Court, the only proceeding in which he did not represent defendant. The three persons who testified for the State at the April trial presented the case in chief against defendant at all of the trials and defense counsel, due to his participation in two of the previous trials, had more than an adequate opportunity to acquaint himself with the content of their eyewitness testimony to an extent whereby he could easily reveal any discrepancies which might appear therein during

the course of the April trial. *See also State v. Preston*, 9 N.C. App. 71, 77, 175 S.E. 2d 705, 708 (1970). In sum, we are unable to say, as a matter of law, that the trial judge abused his discretion in denying the motion.

**[2]** Defendant contends that the State's persistence in seeking a conviction after three previous mistrials amounted to a deprivation of his constitutional protection against double jeopardy. We disagree.

It is a basic precept of the common law, guaranteed by the Federal and State Constitutions, that no person may be twice put in jeopardy of life or limb for the same offense. U.S. Const. Amend V; N.C. Const. Art. 1, § 19; *State v. Cameron*, 283 N.C. 191, 195 S.E. 2d 481 (1973); *State v. Cooley*, 47 N.C. App. 376, 268 S.E. 2d 87, *appeal dismissed*, 301 N.C. 96, 273 S.E. 2d 442 (1980).[1] A defendant's cherished right to have his liberty or life legally imperilled only once for a criminal charge does not, however, necessarily preclude retrial when previous proceedings against him have failed to conclude in a judgment of either conviction or acquittal. *Arizona v. Washington*, 434 U.S. 497, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978). *See generally* Annot., 50 L. Ed. 2d 830, 841-42 (1978); 21 Am. Jur. 2d *Criminal Law* § 194, at 246 (1965). Indeed, the long-standing rule in this country is that an order of mistrial, which is declared for a "manifest necessity" or to serve the "ends of public justice," will not ordinarily cause a subsequent conviction after retrial to be susceptible to a plea of former jeopardy. *United States v. Perez*, 22 U.S. 579, 6 L. Ed. 165 (1824)[2]; *State v. Shuler*, 293 N.C. 34, 235 S.E. 2d 226 (1977), *aff'd sub nom. Shuler v. Garrison*, 631 F. 2d 270 (4th Cir. 1980); *State v. Washington*, 90 N.C. 664, 666 (1884).

---

1. The double jeopardy clause of the Fifth Amendment of the United States Constitution is made applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Justice Sharp, however, correctly noted that the federal provision added nothing to our law since North Carolina has always recognized the constitutional concept as a "sacred principle of the common law." *State v. Battle*, 279 N.C. 484, 486, 183 S.E. 2d 641, 643 (1971); *see State v. Davis*, 80 N.C. 384, 387 (1879).

2. The reports of the United States Supreme Court are replete with cases espousing the constitutional proverb of *United States v. Perez, supra*, that a defendant may be retried consistently with the Fifth Amendment, whenever a mistrial has been declared to meet the ends of substantial justice. *See, e.g., Illinois v. Somerville*, 410 U.S. 458, 93 S. Ct. 1066, 35 L. Ed. 2d 425 (1973); *United States v. Tateo*, 377 U.S. 463, 84 S. Ct. 1587, 12 L. Ed. 2d 448 (1964).

It is, nevertheless, equally well established that the Fifth Amendment can, in overbearing situations, provide recourse for a defendant who has been harassed by multiple retrials.

> [T] he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187-88, 78 S. Ct. 221, 223, 2 L. Ed. 2d 199, 204 (1957); *see Swisher v. Brady,* 438 U.S. 204, 216, 98 S. Ct. 2699, 2706-07, 57 L. Ed. 2d 705, 715-16 (1978); *United States v. Dinitz,* 424 U.S. 600, 611, 96 S. Ct. 1075, 1081, 47 L. Ed. 2d 267, 276 (1976). When oppressive practices by the State are absent, however, the public's interest in a final adjudication of guilt or innocence outweighs the defendant's right to be secure from further judicial scrutiny after the declaration of a mistrial. *See* 49 N.C. L. Rev. 782, 785-88 (1971).

In *Wade v. Hunter,* the Supreme Court recognized that a "rigid formula" would be inappropriate in such cases and, in effect, adopted a "balancing" approach:

> There may be unforeseeable circumstances that arise during a trial making its completion impossible, such as the failure of a jury to agree on a verdict. In such event the purpose of law to protect society from those guilty of crimes frequently would be frustrated by denying courts power to put the defendant to trial again. And there have been instances where a trial judge has discovered facts during a trial which indicated that one or more members of a jury might be biased against the Government or the defendant. It is settled that the duty of the judge in this event is to discharge the jury and direct a retrial. What has been said is enough to show that a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.

336 U.S. 684, 689, 69 S. Ct. 834, 837, 93 L. Ed. 974, 978 (1949); *accord, Arizona v. Washington,* 434 U.S. 497, 98 S. Ct. 824, 54 L.

Ed. 2d 717 (1978); *Green v. United States, supra* (Frankfurter, J. dissenting). We note that our own Supreme Court also indicated its sensitivity to this delicate interaction of the rights of the accused and the interests of society long ago:

> The power confided to the judge of ordering a mistrial, even in case the charge is for a capital felony, with the restraints attending its exercise, is sufficiently stringent to afford every reasonable protection to the accused and secure a fair and impartial trial; and while he can rightfully demand no more, the protection of the public from crime, by the punishment of the offender, will admit of nothing less.

*State v. Washington, supra*, 90 N.C. at 666; *accord, State v. Cooley, supra*, 47 N.C. App. at 384, 268 S.E. 2d at 92.

It is, therefore, clear that each double jeopardy claim must be weighed according to the particular facts of the case. *See Whitfield v. Warden of Maryland House of Correction*, 486 F. 2d 1118, 1121-22 (4th Cir. 1973), *cert. denied*, 419 U.S. 876, 42 L. Ed. 2d 116 (1974). For this reason, the United States Supreme Court has declined to fix a specific limit to the number of times a defendant may be retried after a mistrial has been properly declared. *See Gori v. United States*, 367 U.S. 364, 369, 81 S. Ct. 1523, 1526, 6 L. Ed. 2d 901, 905 (1961), where the Court states, "Judicial wisdom counsels against anticipating hypothetical situations in which the discretion of the trial judge may be abused and so call for the safeguard of the Fifth Amendment. . . ." Thus, no federal or state legal precedent compels the conclusion in the instant case that four criminal trials are definitely one or two too many to be sustained under the constitutional principle of double jeopardy, and we decline to so hold. We are, however, aware of defendant's right to be safe from successive prosecutions at some reasonable time, as well as his right to be protected from prosecutorial efforts to shop around for a convicting jury. Nevertheless, we are not convinced that the circumstances of this case are so extreme as to warrant reversal of defendant's conviction on the ground of double jeopardy based *solely* on the number of trials. Here, the State acted expeditiously and fairly to achieve a final resolution, and all four trials took place in less than a year. Moreover, the mistrials were declared in each instance for a well-accepted reason "caused by operation of law, by an event which comes like an interposition

of Providence — which neither party has contrived to bring about, and which neither has the power to hasten or retard." *State v. Tilletson,* 52 N.C. 114, 116 (1859).

Furthermore, there is substantial authority which supports the conclusion that it was not unconstitutional to retry defendant three times. For instance, in *Hopt v. Utah,* the defendant was retried three times following the reversals of his convictions. 104 U.S. 631, 26 L. Ed. 873 (1882); 110 U.S. 574, 4 S. Ct. 202, 28 L. Ed. 262 (1884); 114 U.S. 488, 5 S. Ct. 972, 29 L. Ed. 183 (1885); 120 U.S. 430 7 S. Ct. 614, 30 L. Ed. 708 (1887). In *United States v. Persico,* the defendants were tried five times following two appellate reversals and two mistrials. 425 F. 2d 1375 (2d Cir.), *cert. denied,* 400 U.S. 869, 27 L. Ed. 2d 108 (1970). There are also several cases upholding a third trial of defendant where the jury has been unable to agree on a verdict in two previous proceedings. *United States v. Gunter,* 546 F. 2d 861 (10th Cir. 1976), *cert. denied,* 431 U.S. 920, 53 L. Ed. 2d 232 (1977); *United States v. Castellanos,* 478 F. 2d 749 (2d Cir. 1973), *reversing,* 349 F. Supp. 720 (E.D.N.Y. 1972); *Orvis v. State,* 237 Ga. 6, 226 S.E. 2d 570 (1976).

Defendant, nonetheless, seeks reversal of his convictions based upon two federal cases: *Carsey v. United States,* 392 F. 2d 810 (D.C. Cir. 1967), and *Preston v. Blackledge,* 332 F. Supp. 681 (E.D.N.C. 1971). In *Carsey,* there had been three mistrials. The first two mistrials were declared when the jury was unable to reach a verdict, but the third mistrial was ordered by the trial judge because defense counsel mentioned the prior mistrials in his closing argument to the jury. On appeal, the majority held that the judge had abused his discretion in declaring the third mistrial since there was no "imperious necessity" for granting it. 392 F. 2d at 812. *See also* U.S. ex rel. *Webb v. Court of Common Pleas,* 516 F. 2d 1034 (3rd Cir. 1975). That decision, therefore, was not grounded upon the *number* of times the defendant had been tried. It merely affirms the general proposition that a defendant's right to have his trial completed by the particular tribunal summoned to sit in judgment on him should be subordinated to the public's interest in a final adjudication of guilt or innocence only "when there is an imperious necessity to do so." *Downum v. United States,* 372 U.S. 734, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963). In the case before us, the three mistrials (for juror misconduct and failure of the jury to agree on a verdict)

were declared for sufficient and proper reasons, and defendant did not take exception to any of them.

In *Preston v. Blackledge,* 332 F. Supp. 681 (E.D.N.C. 1971), a federal trial judge set free two felons whose convictions for robbery with firearms had been affirmed by this Court in *State v. Preston,* 9 N.C. App. 71, 175 S.E. 2d 705, *cert. denied,* 277 N.C. 116 (1970). In that case, four earlier trials had resulted in mistrials because of deadlocked juries. There was no suggestion that any of the mistrials were improperly declared — such as that the judge acted too quickly. The federal trial judge, however, was of the opinion that "jeopardy attached" when the defendants were placed on trial the *fifth* time and, notwithstanding their convictions at *that* trial, ordered their discharge. Although there was no appellate review of his decision, it was obviously wrong. Among other things, it ignores the fundamental principle that a "classic example" of "manifest necessity" for the declaration of a mistrial is the discharge of a genuinely deadlocked jury, *Downum v. United States, supra,* and that when the "manifest necessity" test is met, defendant's right to be secure from further prosecution is outweighed by the public interest in having a final determination of guilt or innocence. *United States v. Perez, supra.* Although the decision to free the prisoners in *Preston v. Blackledge, supra,* was not reviewed on appeal, it has been collaterally discredited. *United States v. Castellanos, supra,* 478 F. 2d n. 2 at 752.

**[3]** Defendant finally argues that the court failed to place on the State the burden of proving that he was not acting within his public authority when he took the items from the store. The contention is patently without merit. The judge clearly instructed the jury that the State had the burden of proving every element of the offense of larceny, to wit, that defendant took and carried away the personal property of another with the intent to deprive the owner of its use permanently and convert it to his own use. Then the judge explained to the jury that defendant's criminal intent would be negated, and the taking therefore lawful, if they believed defendant was acting within the scope of his public authority in removing the items.

> Of course, if the defendant had no criminal intent, that is, no intent to convert the property to his own use or to the use of someone else and to permanently deprive the true

owner of its use, obviously he would not be guilty of anything.

Or, to put it another way, if he had the honest belief that he had a right to take the merchandise referred to in the evidence from the store of Mr. Whaley and that he considered he was performing such act in the course of his duty as a deputy sheriff and if he actually took the property and carried it away but without the intent to deprive the true owner of its use or without the intent to convert it to his own use but for the purpose of bearing out some other thief or for any other purpose that did not involve the criminal intent on his part, then he would not be guilty of the offense charged, either of the offenses charged.

Viewing these instructions as a whole, we hold that the judge adequately explained the law arising from the evidence, G.S. 15A-1232, and that defendant was not entitled to a more specific declaration of his public authority defense absent a special request.

We have carefully reviewed all of defendant's assignments of error, and we conclude that he received a fair trial free from error or prejudice.

No error.

Chief Judge MORRIS and Judge BECTON concur.