CHRISTINA LYNN RUTH, Plaintiff v. VAUGHN ALAN RUTH, Defendant

No. COA02-781

(Filed 3 June 2003)

**1. Constitutional Law— due process—failure to continue— review**

The failure to continue a child custody and visitation trial raised a constitutional issue in that due process involves the fundamental element of reasonable time for preparation. The failure to formally request a continuance does not preclude review, and the constitutional issue involves a question of law which may be reviewed by examination of the circumstances.

**2. Trials— continuance denied—withdrawal of attorney 30 minutes before trial—new issues raised**

An order denying a new trial in a child custody and visitation action was reversed where plaintiff's attorney withdrew 30 min-

utes before trial; plaintiff appeared without counsel and met with defendant and his attorney at the request of the court; they were unable to agree on visitation and proceeded to trial at the suggestion of defendant's attorney; and plaintiff asked for a delay when she realized that issues were being raised which were not related to visitation. Plaintiff likely was unaware or misled about the true nature of the trial, and nothing indicates that she sought to delay or evade trial.

Appeal by plaintiff from orders entered 13 July 2001 and 4 December 2001 by Judge Charlie Brown in Rowan County Superior Court. Heard in the Court of Appeals 19 February 2003.

*Kary C. Watson for plaintiff appellant.*

*Robert L. Inge for defendant appellee.*

TIMMONS-GOODSON, Judge.

Cristina Lynn Ruth ("plaintiff") appeals from orders of the trial court granting Vaughn Alan Ruth ("defendant") custody of Heather Dawn Ruth and Danatha Marie Ruth ("the minor children") and denying plaintiff's motion for a new trial. For the reasons stated herein, we reverse the order of the trial court.

Plaintiff and defendant are the natural parents of the minor children. Plaintiff and defendant were married on 26 June 1992 and subsequently divorced. On 21 January 1997 and 2 June 1998, plaintiff was awarded custody of the minor children and defendant was granted visitation.

On 29 March 2001, defendant filed a motion to modify the custody order, alleging that (1) since the entry of the prior order, plaintiff moved to West Virginia, which interfered with his visitation rights; (2) plaintiff moved several times and with numerous people, which continuously disrupted the minor children (3) the defendant was ordered to pay for day care and the minor children no longer attended day care; and (4) that defendant's income had been reduced since the entry of the prior order. Defendant's motion to modify sought a "workable" visitation schedule, custody of the minor children and a modification in defendant's child support obligations. A hearing on defendant's motion was initially set for 24 April 2001.

On 24 April 2001, plaintiff made arrangements with Milton Bays Shoaf ("Shoaf") to represent her in court. On 26 April 2001, Shoaf's

**RUTH v. RUTH**

[158 N.C. App. 293 (2003)]

secretary telephoned plaintiff to inform her that Shoaf appeared in court and was granted a continuance on the matter. The hearing was calendered for 27 June 2001 and plaintiff met with Shoaf on 26 June 2001 to prepare for the trial. At the meeting, plaintiff paid Shoaf $400.00 as an initial deposit for his services and they discussed the case. On 27 June 2001, thirty minutes prior to trial, plaintiff was informed by Shoaf's secretary that Shoaf would not appear in court. According to testimony from Shoaf, he did not "feel that [plaintiff] had faith in [him] as an attorney." Because of comments she made, and because plaintiff did not pay him his full retainer, Shoaf informed the court on the morning before trial that he did not represent plaintiff. Shoaf then returned to plaintiff a portion of the money given to him and charged her for the conference they had on 26 June 2001.

As a result of Shoaf's withdrawal from the case, plaintiff appeared in court, answered at calendar call and informed the court that she was not represented by counsel. The court then requested that plaintiff meet with Robert Inge ("Inge"), defendant's counsel, in an effort to resolve defendant's motion by agreement.

According to plaintiff, during the meeting with Inge and defendant, they discussed defendant's visitation rights. However, the parties were unable to agree on a schedule and Inge suggested that the court should decide the matter. Plaintiff testified that Inge spoke with Judge Brown in his chambers and that she also asked to speak with Judge Brown. According to plaintiff, Judge Brown informed her that if she was going to ask for a continuance it would be denied.

Following the trial, defendant was granted custody of the minor children and plaintiff was granted visitation. On 31 July 2001, plaintiff filed a motion pursuant to Rule 59 of the North Carolina Rules of Civil Procedure requesting that the 13 July 2001 order be set aside and that she be granted a new trial. Plaintiff's motion was denied on 4 December 2001. Plaintiff appeals the order denying her motion for a new trial and the order granting custody of the minor children to defendant.

[1] The dispositive issue in the case is whether the trial judge abused his discretion in denying plaintiff's motion for a new trial under Rule 59 of the North Carolina Rules of Civil Procedure when her due process rights were violated. For the reasons stated herein, we reverse the order of the trial court.

"Orders under Rule 59 are within the trial court's sound discretion and should not be disturbed on appeal, unless it appears from the record that 'the trial judge's ruling probably amounted to a substantial miscarriage of justice.' " *Allen v. Beddingfield,* 118 N.C. App. 100, 101-02, 454 S.E.2d 287, 289 (1995) (quoting *Burgess v. Vestal,* 99 N.C. App. 545, 550, 393 S.E.2d 324, 327, *disc. rev. denied,* 327 N.C. 632, 399 S.E.2d 324-25 (1990)). "[W]here a motion for a continuance raises a constitutional issue, the trial court's decision . . . involves a question of law, not fact, which may be reviewed by an examination of the circumstances of each case." *State v. Williams,* 51 N.C. App. 613, 616, 277 S.E.2d 546, 548 (1981). Due process involves the fundamental element of a reasonable time for preparation for a trial. *Benton v. Mintz,* 97 N.C. App. 583, 589, 389 S.E.2d 410, 414 (1990); *see also McMillan v. Robeson County,* 262 N.C. 413, 137 S.E.2d 105 (1964). "An unrepresented party's failure to formally request a continuance does not preclude review of this issue." *Id.* at 588, 389 S.E.2d at 413; *see also Underwood v. Williams,* 69 N.C. App. 171, 174, 316 S.E.2d 342, 344 (1984).

[2] Here, plaintiff's request to continue the case at the time of trial raises a constitutional issue. Therefore, we must examine the circumstances of this case to determine whether the ruling from the trial court amounted to a miscarriage of justice. An examination of the record reveals that plaintiff was unrepresented by counsel, did not make a formal request for a continuance until she was on the witness stand, and believed that the issue before the court was visitation and not a change of custody. A close review of the record further indicates that plaintiff was likely misled as to the nature of the proceedings during her pretrial discussions with Shoaf and Inge. At the motion for a new trial, Shoaf gave the following testimony:

Q: Did you have any conversations with Inge about what was at issue in this case?

A: . . . I think he and I had a couple of brief telephone conversations and, yes, I do recall a few things that we talked about. . . . I think since she had the children . . . that he had not had any visitation in the past or . . . and that he was wanting just some standard . . . visitation could be worked out rather than full custody. I think it was sort of understood that she would retain custody and he would get some sort of visitation.

**RUTH v. RUTH**

[158 N.C. App. 293 (2003)]

On cross-examination plaintiff gave the following testimony:

Q: At the calendar call you never asked for a continuance, correct?

A: I don't know the process if I could ask for a continuance at that time.

Q: I'm just asking you did you or didn't you?

A: I just did what they told me to do. They called roll, I answered, and I told him about Attorney Shoaf withdrawing.

Q: And, in fact, later on that morning or right before lunch you asked the judge if you could go ahead and have your hearing, correct?

A: Because I still assumed it was under scheduling visitation.

Q: And at that point even then after you had spoken with me [Inge] you didn't ask for a continuance, did you?

A: All we spoke about was visitation.

Q: Didn't I tell you—and I realize I'm walking a fine line here— but didn't I tell you that [defendant] would like to have custody but we might be able to work out something if we could come up with an agreeable schedule?

A: No.

Q: Do you recall something like that being said?

A: No, you didn't. You came back after you told me what [defendant] wanted for . . . visitation and he wanted all summer. Then when you left and came back, you said that was not agreed upon, we would let the judge decide.

Q: Okay. And when we came back in you again still did not ask for a continuance; . . .

A: When I realized that this hearing was going on and I was put up here on the stand and I did not have an attorney and I realized what was—or had a fathom of what was happening then I asked for a continuance till I could have an attorney.

We find the case of *Benton* instructive. In *Benton*, the defendant's attorney entered a court appearance on the defendant's behalf and

three months later filed a motion to withdraw. *Id.* at 584, 389 S.E.2d at 411. The trial court conducted a special proceeding on the motion to withdraw and the defendant was present in court. *Id.* at 585-86, 389 S.E.2d at 411-12. The defendant believed that the purpose of the hearing was to address the motion to withdraw; however, after the motion to withdraw was granted, the trial court proceeded with the hearing on the merits of the case. *See id.* at 586, 389 S.E.2d at 412. Because the defendant was confused, he asked for additional time to prepare his case, but the request was denied. *See id.* The trial court refused to continue the case even though the defendant's former attorney confirmed that he had probably put his ex-client under the impression that only the motion to withdraw would be heard that day. *Id.* The trial commenced with the defendant representing himself. *Id.* When defendant expressed that he could not secure his witnesses and when complicated legal issues arose during the trial, the defendant asked for a delay in the proceeding. *Id.* at 588, 389 S.E.2d at 413. The defendant was denied a delay in the trial and the trial court entered judgment against the defendant. *Id.* at 586, 389 S.E.2d at 412.

Likewise, in the case at bar, Shoaf entered an appearance for plaintiff in April 2000 and was successful in obtaining a continuance. After a new trial date was scheduled, plaintiff met with Shoaf to discuss the merits of the case. The record reveals that during the meeting with Shoaf, plaintiff paid him money to represent her in the matter; however, Shoaf withdrew from the case thirty minutes before trial. Plaintiff then appeared in court without the benefit of counsel, answered calendar call, and informed the court that her attorney had withdrawn from the case. At the request of the court, plaintiff then met with defendant and his attorney, was unable to agree on visitation, and proceeded to trial at the suggestion of Inge. When plaintiff realized that issues which did not pertain to visitation were being raised, she asked for a delay in the trial. Here, we note that defendant is a layman and while she may have failed to request a continuance at the appropriate time, she made a notable layman's attempt to stop the proceeding once she realized that the trial had moved in a direction she was unprepared to defend. "A continuance may be granted only for good cause shown and upon such terms and conditions as justice may require." N.C. Gen. Stat. § 1A-1, Rule 40(b) (2001).

Furthermore, Shoaf, a licensed attorney with approximately twenty years of legal experience in family law, testified that he talked with Inge and believed that the "primary issue" before the court was visitation. Therefore, it is likely that plaintiff in consulting with Shoaf

on the eve of trial, and in discussing the case with Inge before proceeding to trial, was prepared to proceed on the issue of visitation and not a change of custody. Moreover, nothing in the record here indicates that plaintiff sought to delay or evade the trial, and plaintiff was likely unaware or misled about the true nature of the trial. Accordingly, we grant a new trial. *See Benton*, 97 N.C. App. at 589, 389 S.E.2d at 414 (holding that a reversal of the trial court's refusal to grant a continuance is especially warranted when nothing in the case indicates that the movant's purpose for the motion was to delay or evade trial).

Because we reverse the trial court's order denying plaintiff's motion for a new trial, it is unnecessary for us to address the other assignments of error raised by plaintiff.

New trial.

Judges WYNN and LEVINSON concur.