IN THE MATTER OF: J.L.A.
No. COA08-220.
Court of Appeals of North Carolina.
Filed August 19, 2008
J. Gregory Matthews for Petitioner-Appellee Yadkin County Department of Social Services.
Wyrick Robbins Yates & Ponton LLP, by K. Edward Greene and Tobias S. Hampson, for Respondent_Appellant.
McGEE, Judge.
J.C.N. (Respondent) appeals from an order terminating her parental rights to J.L.A. Respondent also filed a petition for writ of certiorari to review the trial court's denial of her motion for a new trial, and we allow Respondent's petition for writ of certiorari for that purpose. For the reasons set forth below, we affirm the trial court's orders.
The Yadkin County Department of Social Services (DSS) filed a petition on 1 September 2006 alleging that J.L.A. was a neglected juvenile. DSS stated that it had received a report of neglect concerning J.L.A. on 28 August 2006. DSS alleged: (1) on 24 August 2006, Respondent was involved in a physical altercation resulting in injury to Respondent; (2) on 25 August 2006, J.L.A. was seen at a hospital for a possible drug overdose; (3) on 26 August 2006, J.L.A.'s father died; (4) on 26 August 2006, Yadkin County Sheriff's Department officers were called to the home where Respondent and J.L.A. were staying, and Respondent was found to be very intoxicated; and (5) on 31 August 2006, Respondent was seen at a hospital for a possible commitment due to mental health issues, and Respondent tested positive for cocaine, marijuana, and benzodiazepines. DSS alleged that Respondent had an extensive criminal history and ongoing mental health issues as well as substance abuse issues. DSS stated that Respondent was the "sole care provider for [J.L.A.] at this time and due to [Respondent's] continued pattern of erratic behavior, [DSS] is asking for non-secure custody of [J.L.A.]." DSS assumed custody by non-secure custody order. The trial court appointed a guardian ad litem for Respondent and, pursuant to a consent order filed 26 October 2006, J.L.A. was adjudicated a neglected juvenile.
The trial court held a review hearing on 8 January 2007 and entered a review order on 25 January 2007. The trial court found that DSS had recommended that Respondent maintain stable employment and housing, not allow anyone to move into the home or come in and out of the home, seek counseling, use medication only as directed by her doctor, complete the TASK program, and obtain a substance abuse evaluation and submit to drug screens. The trial court also found that Respondent had moved on several occasions, had cancelled an appointment with her doctor, had not obtained a substance abuse assessment, had failed to attend parenting classes due to lack of transportation, and "[had] been arrested and charged with failing to pay child support and larceny." Therefore, the trial court concluded that due to Respondent's mental health and substance abuse issues, Respondent was not able to make rational decisions about J.L.A.'s care, and that the return of J.L.A. to Respondent's home would be contrary to J.L.A.'s best interests.
The trial court held another review hearing on 6 August 2007. The trial court entered a review order on 16 August 2007 finding that Respondent was living in a homeless shelter. Furthermore, the trial court noted that since its last hearing in the matter, Respondent had called her social worker two or three times, and each time Respondent had a different address. Moreover, since the last hearing, Respondent had lived for a period of time with a man who was not related to her. The trial court also noted that Respondent had attempted suicide and had been admitted to Brought on Mental Hospital. Finally, the trial court found that Respondent had tested positive for illegal drugs, had refused to take drug tests, and had failed to attend substance abuse treatment. The trial court continued custody of J.L.A. with DSS and relieved DSS of reunification efforts. The trial court changed the permanent plan for J.L.A. to termination of Respondent's parental rights and adoption of J.L.A. on 20 September 2007.
DSS filed a motion in the cause to terminate Respondent's parental rights on 25 September 2007. DSS alleged four grounds for termination: (1) Respondent had neglected J.L.A. pursuant to N.C.Gen. Stat. § 7B-1111(a)(1); (2) Respondent had willfully left J.L.A. in foster care for more than twelve months without showing that reasonable progress under the circumstances had been made in correcting those conditions that led to the removal of J.L.A. pursuant to N.C. Gen. Stat. § 7B-1111(a)(2); (3) J.L.A. had been placed in the custody of DSS and, for a continuous period of six months immediately preceding the filing of the motion, Respondent had willfully failed to pay a reasonable portion of the cost of care for J.L.A. although Respondent was physically and financially able to do so pursuant to N.C. Gen. Stat. § 7B-1111(a)(3); and (4) Respondent was incapable of providing for the proper care and supervision of J.L.A., such that J.L.A. was a dependent juvenile, and there was a reasonable probability that such incapability would continue for the foreseeable future pursuant to N.C. Gen. Stat. § 7B-1111(a)(6).
The trial court held a hearing on 6 November 2007 regarding DSS's motion to terminate Respondent's parental rights. Respondent did not appear at the hearing. Respondent's counsel moved to continue the hearing, and the trial court denied the motion. The trial court also denied Respondent's counsel's motion to withdraw. The trial court concluded that grounds existed to terminate Respondent's parental rights under N.C. Gen. Stat. §§ 7B-1111(a)(1), (2), and (3). The trial court further concluded that it was in J.L.A.'s best interest that Respondent's parental rights be terminated.
Respondent filed a motion for a new trial on 5 December 2007. Respondent stated that she "was voluntarily committed at Frye Regional Hospital on November 1, 2007, and was not released until November 7, 2007," one day after the termination hearing. Respondent claimed that her voluntary commitment was the basis for her absence at the hearing and that it was "outside" of her control. Respondent argued that her absence from the hearing prevented her from having a fair trial because her counsel was "ethically prohibited from making any argument" and because she was unable to testify in her defense. The trial court denied Respondent's motion for a new trial on 10 December 2007.
We first consider Respondent's argument that the trial court erred by denying her motion for a continuance so that she could be present at the termination hearing. We find no abuse of discretion.
N.C. Gen. Stat. § 7B-803 (2007) provides:
The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments that the court has requested, or other information needed in the best interests of the juvenile and to allow for a reasonable time for the parties to conduct expeditious discovery. Otherwise, continuances shall be granted only in extraordinary circumstances when necessary for the proper administration of justice or in the best interests of the juvenile.
"A trial court's decision regarding a motion to continue is discretionary and will not be disturbed on appeal absent a showing of abuse of discretion. Continuances are generally disfavored, and the burden of demonstrating sufficient grounds for continuation is placed upon the party seeking the continuation." In re J.B., 172N.C. App. 1, 10, 616 S.E.2d 264, 270 (2005) (internal citations omitted) (emphasis added).
In the present case, Respondent's counsel requested the continuance when Respondent did not appear at the hearing. Respondent's counsel informed the trial court that he had spoken with Respondent at Forsyth County Jail three weeks prior, and that Respondent had "expressed her desires" regarding the motion to terminate her parental rights. Respondent's counsel stated that Respondent was aware of the court date at that time. Respondent's counsel again met with Respondent one week prior to the hearing while at Respondent's probation revocation hearing. Respondent's counsel stated that at that time Respondent was aware of the date of the termination of parental rights hearing. Respondent's counsel informed the trial court that Respondent was released from jail and was "not incarcerated anywhere[.]" The trial court found that Respondent had "proper and actual notice of [the] hearing."
Respondent contends that the trial court's failure to grant the continuance deprived her of her ability to present witnesses and argument to the trial court. However, the record shows that Respondent was represented at the termination hearing by counsel, and that Respondent had proper notice of the hearing and sufficient time to prepare. Respondent's guardian ad litem was also present at the hearing. Thus, Respondent's legal interests were represented. Moreover, Respondent failed to demonstrate how she was materially prejudiced by denial of her motion. See In re D.Q.W., 167 N.C. App. 38, 41-42, 604 S.E.2d 675, 677 (2004)(holding that the respondent was not prejudiced where the respondent did not explain why his counsel had inadequate time to prepare for the hearing, what specifically his counsel hoped to accomplish during the continuance, or how preparation would have been more complete had the continuance motion been granted). Accordingly, we find no abuse of discretion.
Respondent additionally contends that the trial court abused its discretion by denying her counsel's motion to withdraw. Respondent argues that by refusing to allow her counsel to withdraw, her counsel was forced . . . into a position where he could not effectively advocate for . . . Respondent[]. On one hand, trial counsel was required to appear and take part in the hearing, on the other hand he could not effectively carry out a defense or advocate for the positions of his client without knowing what those positions were.
We are not persuaded.
The decision whether to allow counsel to withdraw is addressed to the discretion of the trial court, and the trial court's ruling is reversible only for abuse of discretion. Benton v. Mintz, 97 N.C. App. 583, 587, 389 S.E.2d 410, 412 (1990). An abuse of discretion occurs when the trial court's ruling is "so arbitrary that it could not have been the result of a reasoned decision." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985).
In this case, Respondent's counsel was prepared to represent Respondent at the termination hearing. Respondent's counsel cross-examined the witnesses presented by DSS. In essence, Respondent claims that the denial of her counsel's motion to withdraw resulted in Respondent receiving ineffective assistance of counsel. However, this Court will not uphold a claim of ineffective assistance of counsel if the asserted ineffectiveness is a product of a party's own actions. See In re Bishop, 92 N.C. App. 662, 666-67, 375 S.E.2d 676, 679-80 (1989) (holding that when "the lack of preparation for trial is due to a party's own actions, the trial court does not err in denying a motion to continue"). We hold the trial court did not abuse its discretion by denying Respondent's counsel's motion to withdraw.
Respondent next argues the trial court erred by denying her motion for a new trial. However, Respondent's notice of appeal did not list the trial court's order denying her motion for a new trial. Thus, Respondent seeks review of the trial court's order by writ of certiorari. We allow Respondent's petition for writ of certiorari to review Respondent's argument, and we find no abuse of discretion by the trial court in denying her motion for a new trial.
Respondent argues that the trial court erred by denying her motion for a new trial because she was committed in a hospital at the time of the hearing and her absence was beyond her control. Respondent notes that the trial court had previously made findings regarding her "long history of mental health issues" and contends that her absence from the hearing led to her counsel's inability to argue or otherwise present her case to the trial court.
This Court has stated:
"Orders under Rule 59 are within the trial court's sound discretion and should not be disturbed on appeal, unless it appears from the record that `the trial judge's ruling probably amounted to a substantial miscarriage of justice.'" "[W]here a motion for a continuance raises a constitutional issue, the trial court's decision . . . involves a question of law, not fact, which may be reviewed by an examination of the circumstances of each case." Due process involves the fundamental element of a reasonable time for preparation for a trial. "An unrepresented party's failure to formally request a continuance does not preclude review of this issue."
Ruth v. Ruth, 158 N.C. App. 293, 296, 580 S.E.2d 383, 384 (2003) (citations omitted).
In the case before us, Respondent argued in her motion for a new trial that her "voluntary" commitment caused her absence from the hearing, and that her absence was beyond her control. However, by the very definition of a voluntary commitment, Respondent held the power to terminate her commitment and attend the termination hearing. See State v. Raines, 81 N.C. App. 299, 302, 344 S.E.2d 138, 140 (1986), aff'd, 319 N.C. 258, 354 S.E.2d 486 (1987) (recognizing that voluntary patients have the power to "terminate their stay" as hospital patients). Additionally, Respondent was aware of her hearing and had been in contact with her counsel just one week prior to the hearing. However, Respondent failed to inform her counsel of her whereabouts or of her intentions concerning a voluntary commitment. Other than Respondent's conclusory statement that her absence was beyond her control, nothing in Respondent's motion for a new trial suggests that Respondent could not attend the hearing. Furthermore, as previously discussed herein, Respondent was represented at the hearing by her counsel, and her guardian ad litem was present. Accordingly, we conclude that the trial court did not abuse its discretion by denying Respondent's motion for a new trial.
We next consider Respondent's assignment of error concerning the recording of the termination hearing. Respondent notes that the first page of the transcript bears a notation from the transcriptionist that "[d]ue to microphones not working, the recording in this case was very difficult to hear, which made it necessary to put an inordinate amount of `undecipherable' in the transcript." Respondent concedes, however, that the recording in this case has not resulted in any prejudice.
Pursuant to N.C. Gen. Stat. § 7B-806 (2007), "[a]ll adjudicatory and dispositional hearings shall be recorded by stenographic notes or by electronic or mechanical means." However,
[m]ere failure to comply with this statute standing alone is . . . not by itself grounds for a new hearing. A party, in order to prevail on an assignment of error under section 7B-806, must also demonstrate that the failure to record the evidence resulted in prejudice to that party.
In re Clark, 159 N.C. App. 75, 80, 582 S.E.2d 657, 660 (2003) (internal citation omitted). In this case, Respondent concedes that she cannot demonstrate prejudice, and we overrule Respondent's assignment of error.
Respondent also argues the trial court erred by finding that grounds existed to terminate her parental rights. After careful review of the record, briefs, and contentions of the parties, we affirm the termination order. N.C. Gen. Stat. § 7B-1111 (2007) sets out the grounds for terminating parental rights. A finding of any one of the separately enumerated grounds is sufficient to support a termination. In re Taylor, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law." In re D.J.D., 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005).
Pursuant to N.C. Gen. Stat. § 7B-1111(a)(3) (2007), a court may terminate a parent's parental rights if the juvenile has been placed in the custody of a county department of social services . . . and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
In the case before us, the trial court concluded that Respondent failed to pay a reasonable portion of J.L.A.'s cost of care. In support of that conclusion, the trial court found that
Respondent . . . is physically able to work and that in fact she turned down a job with Tyson's poultry factory because they would take out her child support payment and it would not be worth it for her to spend the gas to go there for the amount of money she would make. Respondent . . . did have a job at Wendy's but lost it due to being in jail. The Court specifically finds that . . . Respondent . . . has not maintained stable employment and that she has the ability to work, maintain gainful employment and to pay a reasonable portion of the care for [J.L.A.]. The Court find[s] that . . . Respondent . . . is physically and financially able to pay a reasonable portion of the cost of care of [J.L.A.], but has failed to do so. Respondent . . . has only paid $7.50 toward the care of [J.L.A.] in the six months preceding the filing of this motion in the cause to terminate parental rights.
Respondent did not assign error to this finding of fact. Thus, this finding of fact is deemed supported by competent evidence and is conclusive on appeal. See In re Padgett, 156 N.C. App. 644, 648, 577 S.E.2d 337, 340 (2003).
Respondent argues that the trial court's finding was insufficient to support its conclusion of law because it did not find that her failure to pay was willful. We disagree.
A parent's ability to pay is the controlling characteristic of what is a "reasonable portion" of cost of foster care for the child which the parent must pay. A parent is required to pay that portion of the cost of foster care for the child that is fair, just and equitable based upon the parent's ability or means to pay.
In re Clark, 303 N.C. 592, 604, 281 S.E.2d 47, 55 (1981). In Matter of Bradley, 57 N.C. App. 475, 291 S.E.2d 800 (1982), our Court recognized that where a parent had an opportunity to provide for some portion of the cost of care of the child, and forfeits that opportunity by his or her own misconduct, such parent will not be heard to assert that he or she has no ability or means to contribute to the child's care and is therefore excused from contributing any amount.
Id. at 479, 291 S.E.2d at 802-03; see In re McDonald, 72 N.C. App. 234, 244, 324 S.E.2d 847, 853 (1984) (holding that grounds existed to terminate parental rights for failure to pay a reasonable portion of the cost of care of the juvenile where the trial court"found that [the respondent] ha[d] not been employed during the past five years, and her only efforts at finding a job ha[d] been to make two job applications").
In the case before us, the trial court found that Respondent had paid only $7.50 during the relevant statutory period, and that this amount was not reasonable. The trial court also found that Respondent was physically able to work and that in fact she turned down a job with Tyson's poultry factory because they would take out her child support payment and it would not be worth it for her to spend the gas to go there for the amount of money she would make.
The trial court further found that Respondent did have a job at Wendy's, "but lost it due to being in jail." Based upon these findings of fact, which are deemed to be supported by the evidence, Respondent had the ability to pay more than $ 7.50 toward the cost of care of J.L.A., but failed to do so. Therefore, because the trial court correctly found that Respondent had the ability to pay a reasonable portion of the cost of J.L.A.'s care but did not, we hold that Respondent's failure to pay a reasonable amount toward J.L.A.'s cost of care was willful. See In re T.D.P., 164 N.C. App. 287, 289-91, 595 S.E.2d 735, 737-38 (2004), aff'd per curiam, 359 N.C. 405, 610 S.E.2d 199 (2005) (holding that a parent's failure to pay a reasonable portion of the cost of care of a juvenile is willful where the parent had the ability to pay some amount greater than zero but contributed nothing). Accordingly, we hold that sufficient grounds existed for termination of Respondent's parental rights under N.C.G.S. § 7B-1111(a)(3). Since we hold that grounds existed to terminate Respondent's parental rights under N.C.G.S. § 7B-1111(a)(3), we need not review the remaining grounds for termination found by the trial court. See In re Taylor, 97 N.C. App. at 64, 387 S.E.2d at 233-34. Accordingly, we affirm.
Affirmed.
Judges CALABRIA and STROUD concur.
Report per Rule 30(e).